*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0432p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

WARREN DAVIS,

　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW); UAW REGION 2B; RONALD
GETTELFINGER; and LLOYD MAHAFFEY,

　　　　　　　　　*Defendants-Appellants.*

No. 04-3131

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-01311—Kathleen McDonald O'Malley, District Judge.

Argued: September 22, 2004

Decided and Filed: December 15, 2004

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

————————————

## COUNSEL

————————————

**ARGUED:** Michael B. Nicholson, ASSOCIATE GENERAL COUNSEL, Detroit, Michigan, for Appellants. David G. Oakley, KRAMER & ASSOCIATES, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael B. Nicholson, ASSOCIATE GENERAL COUNSEL, Detroit, Michigan, Rory P. Callahan, Frederick G. Cloppert, Jr., CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, for Appellants. David G. Oakley, Edward G. Kramer, KRAMER & ASSOCIATES, Cleveland, Ohio, Armond D. Budish, BUDISH & SOLOMON, Pepper Pike, Ohio, for Appellee.

————————————

## OPINION

————————————

　　RONALD LEE GILMAN, Circuit Judge. At the 2002 Constitutional Convention of the International Union of the United Automobile Workers of America (UAW), convention delegates adopted an amendment to the UAW Constitution that dissolved one of the UAW's geographic regions and redistributed its members among three neighboring regions. The amendment also had the effect of setting aside Warren Davis's reelection as a regional director, a result that Davis contends was motivated by illegal age discrimination. Davis therefore sued the UAW and two of its officers, Ronald Gettelfinger and Lloyd Mahaffey, in Ohio

state court, alleging state-law claims of age discrimination, conspiracy to discriminate on the basis of age, wrongful discharge, retaliation, libel, and slander.

The UAW removed the case to the United States District Court for the Northern District of Ohio, asserting that Davis's state-law claims sought postelection relief and were therefore preempted by Title IV of the federal Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 481-83 (2004). Finding that there was no federal preemption, the district court remanded the case to the Ohio state court. For the reasons set forth below, we **REVERSE** the district court's remand of Davis's state-law claims and **REMAND** with instructions to dismiss the claims on the basis that they are all precluded by the LMRDA.

## I. BACKGROUND

### A.     Factual background

Davis served for 19 years as an elected member of the governing board of the UAW. After deciding to run for Congress in 2002, Davis announced his intention to vacate his office in the UAW and endorsed his assistant director for his soon-to-be-vacant position. The election for the office, for which Davis's assistant was the sole candidate, was held at the UAW's Constitutional Convention in June of 2002. Due to an apparent last-minute change of heart, however, Davis arranged for his assistant to nominate Davis and then withdraw from the race, resulting in Davis winning the election unopposed.

During his many years of service with the UAW, Davis had been part of an unofficial caucus of politically powerful members who adhered to an informal agreement not to seek elective office after reaching 65 years of age. Angered by Davis's surprise tactics at the convention and his acceptance of an elected position at the age of 67, several members of the unofficial caucus issued a press release calling upon the UAW convention delegates to eliminate Davis's region, redistribute its members among three other regions, and hold new elections. This proposal was adopted by the UAW Constitutional Convention, which promptly dissolved Davis's region the day after his reelection.

### B.     Procedural background

Davis sued the UAW in the United States District Court for the Eastern District of Michigan, alleging a number of federal claims related to the UAW's elimination of his region and the resulting termination of his elected office. *Davis v. UAW*, 274 F. Supp. 2d 922 (E.D. Mich. 2003). The court dismissed the case after finding that it lacked subject matter jurisdiction over Davis's election-related claims because there had been no finding of probable cause by the Secretary of Labor as required by Title IV of the LMRDA, 29 U.S.C. §§ 481-83. The Michigan district court's dismissal of Davis's case was upheld by this court on appeal. *Davis v. UAW*, 2004 WL 2812623 (6th Cir. Dec. 9, 2004).

In the present action, Davis has sued the UAW and two of its officers in Ohio state court, advancing state-law claims of age discrimination, conspiracy to discriminate on the basis of age, wrongful discharge, retaliation, libel, and slander, all arising out of the events at the Convention. These state-law causes of action are premised on the assertion in his complaint that he "was successfully elected as Director" at the UAW Convention and that the UAW's subsequent actions in reorganizing his region improperly deprived him of his rightful office.

The UAW removed the case to the district court, offering two separate grounds in support of removal. First, the UAW contended that, in deciding Davis's state-law claims, the court would be required to interpret the UAW Constitution, thus making the action completely preempted by the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (2004). Second, the UAW asserted that the adjudication of Davis's state-law claims would necessarily require a determination regarding the validity of the UAW election, an exclusively federal question under Title IV of the LMRDA.

The district court remanded the action to the state court after concluding that it lacked subject matter jurisdiction over the case. In so doing, it found that the UAW's federal preemption claims based on the LMRA were without merit, a decision that the UAW has not challenged on appeal. The district court also rejected the UAW's contention that Davis's state-law claims were preempted by Title IV of the LMRDA, causing it to remand the case back to the state trial court. This timely appeal followed.

## II. ANALYSIS

### A. Jurisdiction to review the district court's remand order

A threshold question in this case is whether appellate jurisdiction exists to review the remand order of the district court. As a general rule, remand orders constitute final judgments for purposes of federal appellate jurisdiction and may be reviewed unless some independent bar to appellate review exists. *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (establishing that remand orders are "immediately appealable under §1291 because they conclusively determine a disputed question that is completely separate from the merits of the action") (quotation marks omitted).

Davis contends that we are barred by 28 U.S.C. § 1447(d) from hearing the UAW's appeal from the district court's remand order. Section 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." Despite the sweeping language of this section, however, "[t]he Supreme Court stated long ago . . . that the § 1447(d) proscription is not as broad as it seems." *Baldridge v. Kentucky-Ohio Trans., Inc.*, 983 F.2d 1341, 1343 (6th Cir. 1993).

One significant limitation on the reach of § 1447(d) was explored by this court in *Long v. Bando Manufacturing of America, Inc.*, 201 F.3d 754 (6th Cir. 2000), where appellate review of a remand order was sought. Although acknowledging that "the plain language of 28 U.S.C. § 1447(d) suggests that remand orders concerning cases removed pursuant to 28 U.S.C. § 1441 are never reviewable," *Long*, 201 F.3d at 758, this court concluded that the Supreme Court's ruling in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), dictated that "§§ 1447(c) and (d) must be read together . . . ." *Long*, 201 F.3d at 758. Section 1447(c) directs the district court to remand a removed case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ." After reading § 1447(d) in conjunction with (c), the court in *Long* concluded "that § 1447(d) prohibits review only of remand orders issued pursuant to a finding, under § 1447(c), that the district court lacked subject matter jurisdiction." 201 F.3d at 758.

In determining "the nature and scope of" remand under § 1447(c), this court has "interpreted that provision as necessarily tied to a temporal reference point, namely, the time of removal." *Van Meter v. State Farm Fire & Cas. Co.*, 1 F.3d 445, 450 (6th Cir. 1993). For a case to be deemed remanded pursuant to § 1447(c), the district court must find that subject matter jurisdiction was lacking at the time of removal and then remand on that basis; otherwise, § 1447(d) will not prohibit appellate review of the district court's remand order. *See First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 460 (6th Cir. 2002) (stating that "§ 1447(d) means only that a remand order is unreviewable on appeal when the case was remanded based on the district court's conclusion that it lacked subject matter jurisdiction over the removed case *at the time of removal*") (emphasis in original). Where a district court had proper jurisdiction at the time of removal, but events occurring after removal make remand to the state courts appropriate, § 1447(d) does not bar appellate review of the district court's remand order. *See Letherer v. Alger Group, L.L.C.*, 328 F.3d 262 (6th Cir. 2003) (exercising appellate review where the district court remanded after concluding that a stipulation between the parties had obviated the need to address the federal question); *First Nat'l Bank of Pulaski*, 301 F.3d at 459 (reviewing a remand order where the district court had resolved the federal claims and then remanded the case after finding that it "lacked jurisdiction to adjudicate the remaining state claims").

We conclude that § 1447(d) does not bar our appellate review of the remand order in the present case because the district court possessed subject matter jurisdiction at the time of removal. The UAW removed this case to the district court, arguing that there was federal question jurisdiction over Davis's claim for reinstatement because the claim constituted a request for postelection relief under the exclusive jurisdiction of the LMRDA. Only after finding that Davis had "concede[d] that the remedy of reinstatement [wa]s not available to him" did the district court conclude that the case must be remanded because subject matter jurisdiction had been lost. The district court found that Davis had expressed his intent to abandon this claim in his memorandum supporting his remand motion, which was filed over a month after the case was removed from the state court.

On this point the district court may have been mistaken, however, because Davis did not amend his complaint to remove his claim for reinstatement and has made clear his intention to preserve the claim. Regardless, the district court plainly relied on Davis's alleged concession in remanding the case, finding that it "goes a long way toward mooting the defendants' argument" of preemption by the LMRDA. Because the district court remanded this case only after finding that a post-removal event had deprived it of subject matter jurisdiction, we may exercise appellate jurisdiction over the district court's remand order. *See First Nat'l Bank of Pulaski*, 301 F.3d at 460 (stating that "a remand order is reviewable on appeal when the district court concludes that the action was properly removed but that the court lost subject matter jurisdiction at some point post-removal").

**B**.     **Federal preemption by Title IV of the LMRDA**

   *1.     Davis's state-law claims for age discrimination, conspiracy, wrongful termination, and retaliation*

The UAW contends that remand was improper because Davis's complaint raised exclusively federal questions regarding the validity of the union election, the UAW's tactics therein, and the appropriateness of Davis's reinstatement as a remedy. Specifically, the UAW argues that Davis's claims of age discrimination, conspiracy, wrongful termination, and retaliation all seek postelection relief. Title IV of the LMRDA mandates that challenges to a previously conducted union election may only be brought by the Secretary of Labor. 29 U.S.C. § 483; *Trbovich v. United Mine Workers*, 404 U.S. 528, 533 (1972).

The district court's application of the LMRDA is reviewed de novo. *Argentine v. United Steel Workers, AFL-CIO*, 287 F.3d 476, 482 (6th Cir. 2002). In remanding the present action, the district court concluded that Davis's claims were not preempted by the LMRDA because the indisputably federal questions of "whether Davis was elected" and "whether the defendants eliminated Davis's position" need not be answered in order to adjudicate Davis's claims. We respectfully disagree. For instance, it is difficult to imagine how the state court could adjudicate whether Davis was wrongfully terminated without first finding that he held a position in the UAW. This apparent difficulty is confirmed by the fact that the district court felt compelled to address the validity of the UAW election in its remand order, noting that "the Union does not seriously assert that Davis was not elected" and that "the defendants have never denied (and have no basis for denying) that Davis was elected pursuant to a regular and orderly process provided for under the Union Constitution." To the contrary, the UAW vigorously contests the validity of Davis's election.

We agree with the district court's conclusion that the preemptive scope of the LMRDA is narrow, but disagree that Davis's claims are not within that narrow scope. For example, the district court held that Davis's request for damages in the form of back pay "would not necessarily imply, as defendants assert, that one or more of the Union's election results were invalid." But the cases relied upon by the district court do no more than support the proposition that the LMRDA permits an employee to file an age discrimination claim for back wages when improperly *discharged* by the union; they offer no authority for the court's holding that an employee is not preempted when filing a similar claim in the context of an allegedly unfair union *election*.

Conversely, the two other courts that have addressed this issue in the context of a union election have held that the LMRDA preempts such a claim because "[p]laintiffs can only prevail on . . . the claim for back pay[] if the court determines that the election was improper." *Calciano v. United Bhd. of Carpenters & Joiners*, No. 92-5715, 1993 WL 138827 at *4 (S.D.N.Y. Apr. 23, 1993); *see also Bermingham v. Castro*, No. 98-15859, 1999 WL 644342 at *2 (9th Cir. Aug. 24, 1999) (holding that damages in the form of "lost income . . . effectively challenge the validity of the election already conducted, which is an area in which Title IV provides the exclusive remedy").

Davis's state-law claims in question, including his requested remedy of back pay, logically hinge on his assertion that he was lawfully elected. As the district court in Michigan correctly concluded, claims for postelection relief are relegated to the exclusive jurisdiction of the Secretary of Labor by the LMRDA. *Davis v. UAW*, 2004 WL 2812623 (6th Cir. Dec. 9, 2004). Davis's claims for age discrimination, conspiracy, wrongful termination, and retaliation should therefore be dismissed by the district court for lack of subject matter jurisdiction.

### 2.	*Davis's state-law claims for libel and slander*

Davis's remaining causes of action for libel and slander arise from a press release issued at the UAW Convention, wherein certain delegates alleged that Davis lied about his plans for retirement and employed an "immoral, deliberate, and fraudulent scheme to deny an honest election to the membership." Similar sentiments were also vocalized by some of the delegates shortly after the election.

In order for Davis to establish a prima facie case for libel or slander, he must show that the delegates' statements regarding the impropriety of his actions in the election were false. *See Celebrezze v. Dayton Newspapers, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. 1988) (holding that falsity is an essential element of an Ohio common law defamation claim). To determine whether the statements are false, however, the validity of the election and Davis's tactics therein must be examined.

But this inquiry has already been conducted by the Secretary of Labor in responding to Davis's Title IV complaint. After acknowledging that some delegates had "privately published and distributed a pamphlet condemning [Davis's] stratagem and purposes," the Secretary nevertheless found that the delegates' actions at the Convention had not violated Davis's election-related rights. Because Davis's claims for libel and slander would necessarily require a court to revisit this finding, these claims are also preempted by Title IV of the LMRDA. *Cf. Henegar v. Banta*, 27 F.3d 223, 226-27 (6th Cir. 1994) (holding that the Railway Labor Act "preempts state law claims based on libel and slander" because the "court would inevitably have to interpret the terms of the collective bargaining agreement," a task within the exclusive jurisdiction of the National Railroad Adjustment Board); *Miller v. Norfolk & W. Ry. Co.*, No. 89-4101, 1990 WL 163302, at *5 (6th Cir. Oct. 25, 1990) (unpublished) (finding libel and slander claims preempted by the Railway Labor Act where, "[a]lthough defamation was not an issue before the [administrative] board," the defamation claim was "based upon a matrix of facts that [wa]s inextricably intertwined with the collective bargaining agreement").

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's remand of Davis's state-law claims and **REMAND** with instructions to dismiss the claims on the basis that they are precluded by the LMRDA.